# United States Court of Appeals
## For the First Circuit

No. 25-1024

UNITED STATES OF AMERICA,

Appellee,

v.

GARRITO FORT, a/k/a Tony,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Montecalvo, Circuit Judges.

Theodore M. Lothstein, with whom Lothstein Guerriero, PLLC was on brief, for appellant.

Alexander S. Chen, Assistant United States Attorney, with whom Erin Creegan, United States Attorney, and Charles L. Rombeau, Assistant United States Attorney, were on brief, for appellee.

May 12, 2026

**LYNCH**, **Circuit Judge**.  Garrito "Tony" Fort pled guilty to one count of possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), reserving two arguments.  Using a pistol he brought to an altercation with his girlfriend's family and a family friend, Fort killed the family friend and seriously injured his girlfriend's uncle on November 1, 2021.  Fort appeals, arguing that the district court erred (1) in precluding him from presenting at trial a justification defense, an affirmative defense rooted in the common law and recognized in this circuit's § 922(g) cases, with Fort also contending that the Second Amendment embodies a more defendant-friendly justification defense; and (2) in denying his motion to dismiss the indictment, arguing that § 922(g)(1) is unconstitutional as applied to him under the Second Amendment on the specific facts of this case. Fort also argues that his above-Guidelines sentence of 60 months' imprisonment is substantively unreasonable.  We affirm.

## I.

Because Fort's Second Amendment as-applied challenge turns largely on his proposed justification defense, we turn to that defense first.  A district court may preclude the presentation of an affirmative defense to a jury if the defendant fails to produce sufficient evidence "to create a triable issue." United States v. Gottesfeld, 18 F.4th 1, 15 (1st Cir. 2021) (quoting United States v. Lebreault-Feliz, 807 F.3d 1, 4 (1st Cir. 2015)).

- 2 -

The parties disagree as to whether our review is governed by a de novo or an abuse of discretion standard. Our decisions reviewing whether a defendant has made a sufficient threshold showing to warrant submission of an affirmative defense to the jury use de novo review. See Gottesfeld, 18 F.4th at 15; United States v. Henderson, 911 F.3d 32, 36 (1st Cir. 2018); Lebreault-Feliz, 807 F.3d at 4. Other decisions use abuse of discretion review when addressing related but distinct issues. See United States v. Diaz-Castro, 752 F.3d 101, 108 (1st Cir. 2014) (reviewing for abuse of discretion the exclusion of evidence offered to support the asserted affirmative defenses, including duress, and reviewing de novo the refusal to give the requested jury instruction); United States v. Florentino-Rosario, 19 F.4th 530, 534, 538 (1st Cir. 2021) (explaining that "[p]reserved objections to denials of requested jury instructions are reviewed under a 'split standard': questions as to whether the applicable law is correctly stated are reviewed de novo, while questions as to whether the instruction's phrasing is unfairly prejudicial are reviewed for abuse of discretion" (quoting DeCaro v. Hasbro, Inc., 580 F.3d 55, 61 (1st Cir. 2009))). To the extent there is tension, we need not resolve it here because Fort's arguments fail even under de novo review.

**A.**

We begin with the relevant procedural history and later describe the facts as found by and presented to the district court.

- 3 -

In August 2022, a federal grand jury returned a one-count indictment charging Fort with violating 18 U.S.C. §§ 922(g)(1) and 924(e).[1] The predicate felony convictions were Fort's Massachusetts conviction for a 2006 assault with a dangerous weapon, and his 2016 Massachusetts convictions for assault and battery with a dangerous weapon and kidnapping.[2] Fort does not dispute those convictions.

On April 12, 2023, Fort filed a notice that at trial he intended to raise the justification defenses of duress, necessity, and self-defense, citing Dixon v. United States, 548 U.S. 1 (2006), and United States v. Leahy, 473 F.3d 401 (1st Cir. 2007).[3] Fort, who is black, asserted that he possessed the firearm in response to what he characterized as a racially motivated attack on him by white assailants, arguing that the attack started while he was on

---

[1] On February 24, 2022, the New Hampshire Attorney General's Office announced that Fort had been charged under state law with being a felon in possession of a firearm, N.H. Rev. Stat. § 159:3, and that it would not bring homicide charges because it had concluded that the State could not disprove beyond a reasonable doubt Fort's assertion of self-defense. The State later referred the matter for federal prosecution.

[2] Fort's criminal history also included Massachusetts convictions for assault and battery, possession of a controlled substance, breaking and entering a motor vehicle with intent to commit a felony, and other offenses, in addition to a New Hampshire conviction for reckless operation of a motor car.

[3] Fort's notice also argued that the government should bear the burden of disproving justification, and the government filed a separate response that, under Dixon and Leahy, it was Fort who had the burden of making the threshold showing.

his own property, in the driveway in front of the house where he was living with his then-girlfriend, Amanda Lovejoy. On July 19, 2023, the government filed a motion to preclude Fort from presenting that defense, arguing that he could not make a threshold showing as to any of its requirements. Fort filed an objection on August 4, 2023, largely disputing the government's account of the facts.

On August 24, 2023, the district court held an evidentiary hearing on the parties' pretrial motions, at which Richard Janvrin Sr. testified. Richard Sr.[4] is Lovejoy's grandfather and the owner of a multi-unit house whose top-floor, three-bedroom residence was occupied by Richard Sr., his wife, Lovejoy, and Fort, and whose parking area was the site of the shooting. The parties also proceeded on exhibits submitted the day before.[5] Fort made an offer of proof, over the government's objection, that he met the threshold requirements under Leahy to present a justification defense to the jury. Fort proffered that, by the time of the shooting, he had known of Christopher Coletti, the deceased victim, for about five months; understood that Coletti

---

[4] Because several members of the Janvrin family are involved in the events at issue, we refer to them by their first names.

[5] Fort's exhibits included a police report, search warrants, a probable cause affidavit, and interview transcripts; the government's exhibits included video evidence, the transcript of Fort's police interview, photographs of the scene, state court records, and Fort's criminal history.

was a friend of his girlfriend's family; had heard that Coletti used drugs and had committed theft and assault; and had been told that Coletti directed a racial slur at him before the day of the shooting. And so, Fort said, he reasonably feared Coletti when he left the upstairs residence knowing the loaded 9 mm pistol was in his sweatshirt pocket. The court rejected Fort's justification defense, orally granted the government's motion, and later explained in a September 25, 2023 written order that Fort had not made a sufficient showing as to any requirement of that defense.

On October 16, 2023, Fort entered a guilty plea conditional on the right to appeal from the ruling precluding a justification defense and the denial of his motion to dismiss.

**B.**

Because the parties agree that the facts relevant to the justification defense must be viewed in the light most favorable to Fort, we draw those facts principally from the district court's order granting the government's motion to preclude that defense, in which the court viewed the evidence in that light. See United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996). When relevant, we also take from the undisputed portions of the presentence investigation report and the sentencing record. See United States v. Cowette, 88 F.4th 95, 97 n.1 (1st Cir. 2023).

In November 2021, Fort was living with Lovejoy in the top-floor residence of Richard Sr.'s multi-unit house in Seabrook,

- 6 -

New Hampshire. Two of Lovejoy's uncles, Richard Janvrin Jr. and Anthony Janvrin, lived in apartments on the bottom floor. Fort kept two cars, including a Nissan Maxima, in a parking area on the property between the house and the street, and Fort attached a security camera to the house trained on that area to monitor his cars.

Either late on October 31, 2021, or in the early morning hours of November 1, 2021, Fort and Lovejoy watched the live camera feed and believed they saw Coletti scuff the Maxima's sideview mirror with his car. Fort had never interacted with Coletti but believed he had intentionally damaged the mirror. Lovejoy texted her uncle Anthony about what they had seen. Anthony responded after having apparently spoken with Coletti, who said he would have stopped had he realized he hit the Maxima. Anthony added that he was confident Coletti would pay for any damage to the car.

Later that morning, Coletti and Richard Sr. were outside the Janvrin home moving tools between two parked trucks, and Fort saw the two men from inside the house. Fort went outside to speak with Coletti about the damage to his car and to ask him to pay. Fort stipulated that when he left the house he took with him and concealed in the pocket of his hooded sweatshirt a loaded Taurus 9 mm pistol that Lovejoy had purchased months earlier. Fort had possession of the pistol, both before he left the house and at all relevant times thereafter. Fort later told police that he brought

the pistol with him not because he intended to use it but as "a form of intimidation" and for "scare tactics."

The initial exchange between Fort and Coletti occurred off camera, but later parts were recorded and introduced as evidence at the motion hearing.[6] The discussion quickly became heated, with both men yelling. Fort says Coletti used racial slurs during the argument; the audio is unclear. Lovejoy came outside after hearing the commotion and walked to the off-camera area where Fort and Coletti were arguing. Lovejoy and Richard Sr. eventually separated the two men. Off camera, Coletti went to his car, grabbed a pole-like object, and began swinging it around. Fort later explained that it was this action by Coletti which caused him to take the pistol in his hand from out of his pocket. As recorded by the camera, Richard Sr. tried to separate the two men, and he repeatedly told Fort to put the gun away, but Fort did not do so. Lovejoy took the object from Coletti's hand and threw it to the ground.

Fort then moved closer to Coletti as the two men continued arguing. Fort later explained he did so because Coletti was wrestling with Lovejoy. After the two men moved off camera for a short time, the camera recorded Coletti walking toward Fort

---

[6] The video footage does not show the area where Coletti and Richard Sr. were working or where Fort first approached them but does include muddled audio.

with his fists raised and what happened next: Fort backed away for several seconds among the parked cars, holding the pistol at his side. As Fort retreated, Richard Jr. emerged from the house, came up behind Fort, and, without warning, struck Fort on the side of his head. Fort immediately fired one shot from the pistol that hit Richard Jr. in the abdomen and, roughly one second later, fired a second shot which struck Coletti under the armpit. Coletti, who was standing several feet away, collapsed and died at the scene. Richard Sr. unsuccessfully tried to take the pistol from Fort's hand. Lovejoy intervened and took the pistol from Fort. Fort then fled the scene. Police found and arrested Fort later that day, and he agreed to a voluntary custodial interview, a transcript of which was part of the evidence. Richard Jr. survived the shooting, was in a coma for several weeks, and had part of his colon removed.

## C.

We start with Fort's argument that the district court erred in its analysis of the threshold showing required under Leahy for him to present a justification defense to the jury. Leahy held that "there is a justification defense available in [federal] felon-in-possession cases, which typically encompasses duress, necessity, and self-defense." 473 F.3d at 403. Under the common law, the defendant bears the burden of making the threshold showing required to present such a defense. See Dixon, 548 U.S. at 8

- 9 -

(explaining, in addressing a duress defense to federal firearms charges, that, at common law, defendants bore the burden of proving "all . . . circumstances of justification, excuse or alleviation" (omission in original) (quoting Patterson v. New York, 432 U.S. 197, 202 (1977))). Fort thus had to produce enough evidence to create a triable issue on each of the defense's four requirements that "(i) [he] was under an unlawful and present threat of death or serious bodily injury; (ii) he did not recklessly place himself in a situation in which he would be forced to engage in criminal conduct; (iii) he had no reasonable legal alternative but to engage in that conduct; and (iv) there was a direct causal relationship between his criminal conduct and the need to avoid the threatened harm." Leahy, 473 F.3d at 404; see also id. at 409; Gottesfeld, 18 F.4th at 15. We agree with the district court that Fort failed to make the threshold showing.

The first requirement, imminence, is assessed under an objective standard. A defendant must demonstrate a "real emergency giving rise to immediate danger to oneself or to a third party." Henderson, 911 F.3d at 36; accord United States v. Alston, 526 F.3d 91, 95 n.7 (3d Cir. 2008) ("Only in rare circumstances will anything but an 'immediate emergency' constitute a present threat." (quoting United States v. Bell, 214 F.3d 1299, 1301 (11th Cir. 2000))). That inquiry does not turn on the defendant's "subjective perceptions about whether the threat was likely to be

acted upon or whether escape was possible."  United States v. Castro-Gómez, 360 F.3d 216, 219 (1st Cir. 2004).  Courts instead "hypothesize[] a defendant of ordinary firmness and judgment and ask[] what such a defendant was likely to have experienced or how such a defendant was likely to have acted."  Id.

It is undisputed that Fort chose to arm himself and to go outside to talk to Coletti about the scuffing to his car mirror, and that he admittedly brought the pistol to intimidate and scare Coletti.  When Fort first possessed the pistol -- when he took it in his hand and placed it in his sweatshirt pocket, and later left the house knowing it was there -- he was under no threat of death or serious bodily injury.  Coletti was outside, and Fort was inside.  Moreover, Richard Sr. had already told Fort he was sure Coletti would pay for any damage to the car.  Those facts alone defeat Fort's effort to assert a justification defense and require affirmance of the district court's order.  See Leahy, 473 F.3d at 404; Henderson, 911 F.3d at 33-34.

Shifting his arguments, Fort next contends that the Leahy criteria for asserting the justification defense are too narrow in light of the Second Amendment decision in District of Columbia v. Heller, 554 U.S. 570, 628-29 (2008).  Even were we to accept Fort's assumption that the Second Amendment broadens justification defenses to defendants' benefit, Fort does not explain why it would be broadened in a way that would permit him

- 11 -

to prevail on these facts. Even if, on that premise, there may be cases with unique facts in which the right of self-defense is not adequately captured under Leahy in § 922(g)(1) prosecutions, his argument fails on what the facts of record here show. We also reject Fort's assumption that it is proper to narrow the justification defense analysis to the moment of the shooting. At the point Fort first possessed the gun inside, there was no plausible justification defense.

**II.**

Fort next challenges the district court's denial of his motion to dismiss the indictment in light of New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). Our review is de novo. United States v. Minor, 165 F.4th 616, 621 (1st Cir. 2026).

Fort raises an as-applied challenge that relies almost entirely on his justification defense.[7] We need not resolve

---

[7] Before this court, Fort has abandoned both his facial challenge to § 922(g)(1) and a separate as-applied challenge he raised in the trial court, namely, that the constitutionality of applying § 922(g)(1) to him turned on the facts underlying his Massachusetts predicate felony convictions. Fort described his 2016 Massachusetts convictions for kidnapping and for assault and battery with a dangerous weapon as arising from a domestic dispute and contended that, historically, men who mistreated or were violent toward women were not barred from possessing firearms. On August 28, 2023, the government filed a supplemental objection, arguing that United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011), foreclosed the fact-specific inquiry Fort proposed and that his criminal history reflected multiple violent

whether as-applied challenges may be properly brought as to § 922(g)(1). Compare Range v. Att'y Gen., 124 F.4th 218, 232 (3d Cir. 2024) (en banc) (holding § 922(g)(1) unconstitutional as applied to a nonviolent offender), and United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011) (reading Heller's "presumptively lawful" language to leave open the possibility of as-applied challenges to § 922(g)(1)), with United States v. Jackson, 110 F.4th 1120, 1125 (8th Cir. 2024) (rejecting "felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"), and United States v. Hunt, 123 F.4th 697, 702 (4th Cir. 2024) (rejecting defendant's as-applied challenge to § 922(g)(1) because "neither Bruen nor [United States v. Rahimi, 602 U.S. 680 (2024),] abrogate[d] [Fourth Circuit] precedent foreclosing as-applied challenges to [§] 922(g)(1)" and because, in the alternative, § 922(g)(1) "would pass constitutional muster even if [the court] were unconstrained by circuit precedent").

Nor need we decide who would bear the burden on such a challenge, even if as-applied challenges were cognizable. Cf. United States v. Williams, 113 F.4th 637, 657, 662 (6th Cir. 2024) (placing burden on the defendant to show, in an as-applied

convictions. The district court rejected Fort's separate as-applied theory because (a) Fort had a Massachusetts conviction for a 2006 assault with a dangerous weapon "unrelated to domestic violence," and (b) the First Circuit "specifically cautioned courts not to allow highly fact-specific objections to 922(g)(1)'s ban based on individual circumstances" in Torres-Rosario.

challenge to § 922(g)(1), that he is not dangerous). Regardless of which party bears that burden, the facts here do not support justification under our cases, under the common law, or under Fort's own Second Amendment theory. Throughout this case, the government has argued that Bruen neither disturbed the Supreme Court's considered dicta recognizing the presumptive lawfulness of felon-in-possession restrictions nor abrogated controlling First Circuit precedent upholding § 922(g)(1) as to violent felons like Fort, and that § 922(g)(1) accords with a longstanding Anglo-American tradition of disarming dangerous or non-law-abiding persons.

Fort's Second Amendment as-applied challenge based on the facts of this case essentially concedes that there are applications of § 922(g)(1) which do not violate the Second Amendment and which do comport with this nation's history and tradition. Cf. Rahimi, 602 U.S. at 700 (upholding facial challenge to § 922(g)(8) on the basis that "[o]ur tradition of firearm regulation allows the [g]overnment to disarm individuals who present a credible threat to the physical safety of others"). The district court rejected his as-applied challenge and, given the narrow argument he makes to us and his lack of specificity in making it, we have no reason to disagree.

## III.

The district court imposed an above-Guidelines sentence of 60 months' imprisonment followed by three years of supervised release. On appeal, Fort argues that the sentence was substantively unreasonable. Our review is for abuse of discretion. See United States v. Maldonado-Velazquez, 164 F.4th 154, 158, 161 (1st Cir. 2026). When a district court "imposes a sentence above the guideline sentencing range, it 'must justify a variance of the magnitude in question, . . .' and 'the rationale underlying the upward variance should be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" Id. at 161 (omission in original) (quoting United States v. Polaco-Hance, 103 F.4th 95, 104 (1st Cir. 2024)). The court must also explain why the defendant's case falls outside "the ordinary situation covered by the guidelines calculation." Id. (quoting Polaco-Hance, 103 F.4th at 104).

At a sentencing hearing on December 18, 2024, the district court calculated an advisory range of 24 to 30 months' imprisonment based on a total offense level of 17 and criminal history category of I. After hearing argument, the court imposed the 60-month sentence described above. The court explained that an upward variance was warranted because Fort's unlawful possession of the pistol was "not justified" and caused "the worst type of harm" § 922(g) is meant to prevent: he "cause[d] someone's

- 15 -

death" and "maimed another." The court also noted that the advisory range had been substantially lowered because each disputed Guidelines ruling had gone in Fort's favor.[8] After considering Fort's mitigating evidence, the court concluded that a 60-month sentence was sufficient but not greater than necessary under 18 U.S.C. § 3553(a). The court added that even if it had made the guidelines adjustments sought by the government, it would have varied down to the same 60-month sentence.

Fort's arguments on appeal amount to mere disagreement with the district court's view of the facts and its weighing of the § 3553(a) factors. He argues that a reasonable reading of the record shows Coletti's death and Richard Jr.'s injury "were entirely the result of their own actions" and that the state homicide prosecution was "propped up based on the falsehoods told by his white accusers." The district court was not required to accept Fort's implausible view of the facts or to give any mitigating considerations the weight he preferred. The court's rationale was thoughtfully explained and rooted in facts that set Fort and his offense apart from the mine-run firearm possession case. See Maldonado-Velazquez, 164 F.4th at 161. Although Fort "surely would have preferred a different result, we decline to

---

[8] The district court most notably declined to apply the homicide cross-reference in U.S.S.G. § 2K2.1(c)(1)(B) and a four-level enhancement under § 2K2.1(b)(6)(B).

'substitute his judgment for that of the sentencing court.'"  Id. (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)).

**IV.**

Fort's conviction and sentence are **affirmed**.