UNITED STATES of America, Plaintiff-Appellee,

v.

James Vincent DELEVEAUX, Defendant-Appellant.

No. 98-5685.

United States Court of Appeals,

Eleventh Circuit.

March 9, 2000.

Appeal from the United States District Court for the Southern District of Florida.(No. 98-00286-CR-JLK), James Lawrence King, Judge.

Before BLACK and HULL, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

HULL, Circuit Judge:

Defendant-Appellant James Vincent Deleveaux appeals his conviction and 46-month sentence for being a convicted felon in possession of a firearm. Deleveaux challenges the district court's jury instructions regarding his justification defense. After review, we find that justification is available as an affirmative defense to this strict liability offense and that the court properly instructed the jury that Deleveaux must prove justification by a preponderance of the evidence.

## I. EVIDENCE AT TRIAL

A one-count indictment charged Deleveaux with being a convicted felon in possession of a Mack 11, semiautomatic pistol on May 23, 1997, in violation of 18 U.S.C. § 922(g)(1). At trial, the parties stipulated that Deleveaux had been convicted of a felony prior to May 23, 1997, and that the pistol described in the indictment was a firearm in and affecting commerce.

At trial, Deleveaux testified and acknowledged that as a convicted felon he was not supposed to possess a firearm. Deleveaux also admitted knowing that, prior to May 23, 1997, this pistol had been placed in the attic crawl space that was accessible through the master bedroom of his residence. According to

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Deleveaux, the gun belonged to his wife, and he first learned that his wife kept the gun in the attic crawl space of their home in December 1996. At that time, however, Deleveaux was not residing in the home. Deleveaux stated that he had moved out in October 1996 and was just there for a visit when his wife showed him the gun. Deleveaux moved back to the home in February 1997. Deleveaux claimed that he did not see the gun again until May 23, 1997.

A.    *The Shooting*

It is undisputed that, on May 23, 1997, Deleveaux pulled the pistol out of the attic crawl space, ran down the stairs of his two-story home with the pistol in his hand, fired the pistol, and later returned the pistol to the crawl space. Deleveaux's theory of defense was that he was justified in possessing the pistol on May 23, 1997, in response to a threat of death or serious injury to himself and his family. However, the Government and Deleveaux presented conflicting evidence about the events that spurred Deleveaux to use the pistol.

Deleveaux testified that he heard banging at his front door while he was upstairs, getting his children ready for bed. From downstairs, Mrs. Deleveaux called out that she would answer the door. Deleveaux then heard his wife scream and a shot. After locking his children in their room, Deleveaux ran to the master bedroom, stood on the night stand, opened the attic crawl space, patted around, and found his wife's gun. Deleveaux then ran downstairs with the gun in his hand.

According to Deleveaux, a man standing in the doorway shot at him while he was coming down the stairs. Deleveaux then noticed his wife laying on the floor inside the house, trying to close the front door with her feet. As Deleveaux tried to close the front door, one bullet came through that door and another came through a nearby window. Deleveaux then saw that Willy Timmons, a neighbor, and at least one other man had guns and were shooting. Deleveaux stated that he "lost it," fired at Timmons and the others, and told his wife to call 911. Deleveaux testified that he never left his porch and did not pursue Timmons or the others

2

down the street as they fled. Instead, Deleveaux walked upstairs to the master bedroom, placed the gun back in the attic crawl space, and rejoined his children.

In contrast, the Government's evidence showed Deleveaux as the aggressor. Timmons testified that he went to the Deleveaux residence with his wife, his sons, and a friend to resolve a misunderstanding. Mrs. Deleveaux answered the door, appeared very upset, and was rude. Timmons noticed that she appeared to be hiding something behind her back in her right hand.

Then, according to Timmons, "everything started getting out of hand." Mrs. Deleveaux started to move her hand out from behind her back. Mrs. Timmons yelled "watch out." Timmons saw Deleveaux running down the stairs inside the home, firing a gun, and shouting for Mrs. Deleveaux to "use that shit." Timmons instructed everyone with him to run. Timmons also pushed Mrs. Deleveaux, causing her to fall. Timmons testified that when Mrs. Deleveaux fell, she dropped the gun she had been holding behind her back. Timmons claims he grabbed that gun and fired two or three shots towards the door of the Deleveaux residence. Before taking cover behind cars in the parking lot, Timmons threw his gun back towards the Deleveaux residence as a signal to Deleveaux that he did want to fight anymore. Timmons avers that Deleveaux continued shooting as they fled.[1]

B.    *Police Investigation*

When the police arrived, Deleveaux informed them that he was a convicted felon and consented in writing to a search of his home, but did not volunteer any information about a gun. The officers found the loaded, Mack 11, nine-millimeter, semiautomatic pistol, with the safety off, in the attic crawl space.

Officers also recovered thirteen nine-millimeter bullet casings, which a firearms examiner determined were fired by this Mack 11 pistol. Four casings were on the front porch of the Deleveaux home; one was

---

[1]Timmons also had been convicted of a felony prior to May 23, 1997. The police searched his residence, but never found a gun. However, the testimony of Mrs. Innocent, Deleveaux's next-door neighbor, contradicts Timmons's version of the events. Mrs. Innocent testified that she saw Timmons slap Mrs. Deleveaux, who fell. As Mrs. Deleveaux tried to get back inside her house, Timmons lifted his shirt and pulled out a black object. Although she did not clearly see the object, Mrs. Innocent believed it to be a gun because she heard shooting begin as soon as she went into her house.

on the walkway leading from the home to the parking lot; and eight were in the parking lot. No casings were found inside the Deleveaux home.

Officers observed two bullet holes in the front door of the Deleveaux home and another bullet hole in a front window. Officers determined that these three holes were made by three bullets fired into the home from outside. The officers recovered one spent projectile that came through the front window and lodged in a wall and other spent projectiles and bullet fragments from a car in the parking lot. A firearms examiner determined that three of the spent projectiles and bullet fragments were fired by a .38 caliber weapon and not by this Mack 11 pistol.

## II. JURY INSTRUCTIONS

The Government objected to Deleveaux's proposed jury instructions about his justification defense, arguing that even Deleveaux's version of the events did not warrant an instruction on that defense. The Government argued that even after the shooting ceased, Deleveaux did not relinquish the gun but continued to possess it and hid it back in the attic crawl space of his home. The district court observed that whether Deleveaux was entitled to assert a justification defense was a "close question." The court decided to "err[ ] on the side of giving the defendant the opportunity to argue this matter to the jury."

However, the district court declined to give Deleveaux's proposed instruction that the Government bore the burden of proving beyond a reasonable doubt that Deleveaux did not act under duress or necessity in possessing the firearm. Deleveaux, the Government, and other circuits have termed this the "justification defense" in § 922(g)(1) cases.[2] After reviewing case law from this and other circuits, the court concluded that Deleveaux's justification defense was an affirmative defense, and thus, the burden was on Deleveaux to prove

_____

[2]On appeal, the parties refer to Deleveaux's defense primarily as a "justification defense." Other circuits in felon-in-possession cases have also used "justification" to refer generally to this type of defense. *See United States v. Gomez,* 92 F.3d 770, 774 (9th Cir.1996); *United States v. Paolello,* 951 F.2d 537, 540-41 (3d Cir.1991); *United States v. Singleton,* 902 F.2d 471, 472 (6th Cir.1990); *United States v. Gant,* 691 F.2d 1159, 1161-62 (5th Cir.1982). Thus, we find it unnecessary for purposes of this case to explore the distinctions between duress and necessity.

4

that defense by a preponderance of the evidence. The district court instructed the jury accordingly.[3] After the jury's guilty verdict, Deleveaux timely appealed.

## III. STANDARD OF REVIEW

On appeal, Deleveaux principally contends that the trial court's jury instructions incorrectly placed the burden on him to prove his justification defense. This Court reviews *de novo* whether the district court misstated the law when instructing the jury or misled the jury to the prejudice of the defendant. *See United States v. Chirinos,* 112 F.3d 1089, 1096 (11th Cir.1997), *cert. denied,* 522 U.S. 1052, 118 S.Ct. 701, 139 L.Ed.2d 644 (1998); *United States v. Chandler,* 996 F.2d 1073, 1085 (11th Cir.1993). In making this

---

[3]The trial court instructed the jury in relevant part, as follows:

> It's the theory of the defense in this case that James Deleveaux was temporarily in control of a gun under circumstances where he was reasonably acting out of fear for the safety of his life and the safety of his family, and that although he may have committed the acts charged in the indictment, he did so out of duress or justification.
>
> In order to establish the defense of justification or necessity, the defendant James Deleveaux must prove the following three elements by a preponderance of the evidence.
>
> One, that he acted under an immediate threat of death or serious bodily injury; two, that he had a well founded fear that the threat would be carried out; and three, that he had no reasonable opportunity to escape or inform police.
>
> If the evidence convinces you that the defendant has proven by a preponderance of the evidence his defense of justification, then it is your duty to find the defendant not guilty.
>
> In this case it's the responsibility of the defendant to prove every essential part of his claim of justification by a preponderance of the evidence. This is sometimes called the burden of proof or the burden of persuasion. A preponderance of the evidence simply means an amount of evidence which is enough to persuade you that the defendant's claim is more likely true than not true.

The district court drew in part from the pattern instruction on "Coercion and Intimidation." *See* Committee on Pattern Jury Instructions, District Judge's Ass'n of the Eleventh Circuit, Pattern Jury Instructions (Criminal Cases), Special Instruction 15 (1997).

5

determination, we look at the entire jury charge in the context of the trial record. *See Chandler,* 996 F.2d at 1085.[4]

## IV. DISCUSSION

Whether a justification defense is available in a § 922(g)(1) case and, if so, who bears the burden of proving justification are questions of first impression in this circuit. We first examine the elements of the felon-in-possession offense under § 922(g)(1) and then the availability and nature of the justification defense in the context of this particular strict liability offense. After doing so, we conclude that the district court's instructions properly placed the burden on Deleveaux to prove his justification defense by a preponderance of the evidence.

*A.      Justification Defense to § 922(g)(1)*

The felon-in-possession statute, 18 U.S.C. § 922(g)(1), provides in relevant part that "[i]t shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ... possess in or affecting commerce, any firearm."[5] To establish a violation of § 922(g)(1), the government must prove beyond a reasonable doubt three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce. *See United States v. Billue,* 994 F.2d 1562, 1565 n. 2 (11th Cir.1993).

Since the language of § 922(g)(1) prohibits a convicted felon from even possessing a firearm, the first question is whether a justification defense is available to a § 922(g)(1) charge. We join the other circuits addressing this issue and hold that the defense of justification may be available to a § 922(g)(1) charge.[6] *See*

---

[4]Deleveaux also challenges the sufficiency of the evidence to support his conviction. However, we find no merit to this claim and affirm without further discussion. *See* 11th Cir. R. 36-1.

[5]*See also* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection ... (g) ... of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.").

[6]We emphasize that we address only whether justification may be a defense to criminal charges under § 922(g)(1) and not whether justification may be a defense to other criminal charges.

*United States v. Gomez,* 92 F.3d 770, 774-75 (9th Cir.1996); *United States v. Paolello,* 951 F.2d 537, 541 (3d Cir.1991); *United States v. Singleton,* 902 F.2d 471, 472 (6th Cir.1990).[7] *See also United States v. Bailey,* 444 U.S. 394, 415 n. 11, 100 S.Ct. 624 n. 11, 62 L.Ed.2d 575 (1980) (recognizing that the justification defenses of duress and necessity are generally available in a prosecution for escape from a federal prison despite the absolute language of 18 U.S.C. § 751(a) and the lack of a mens rea requirement that might be negated by such a defense).

However, we also agree with those circuits that this defense is available in § 922(g)(1) cases in only extraordinary circumstances. *See, e.g., Paolello,* 951 F.2d at 542 (listing cases that "have limited the breadth of the justification defense when advanced in the section 922 context in order to achieve the statute's purposes" and stating that "[t]he restrictive approach [to the justification defense] is sound"); *Singleton,* 902 F.2d at 472 ("The justification defense for possession of a firearm by a felon should be construed very narrowly."). *See also United States v. Perez,* 86 F.3d 735, 737 (7th Cir.1996) (emphasizing that "[t]he defense of necessity will rarely lie in a felon-in-possession case" and is available "only in the most extraordinary circumstances"). Similar to other circuits, we find that a defendant must show these four elements to establish this defense in the § 922(g)(1) context:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.[8]

---

[7]While not specifically addressing § 922(g)(1), other circuits have recognized the defense in the context of § 922(g)(1)'s predecessor, 18 U.S.C.App. § 1202(a)(1). *See United States v. Vigil,* 743 F.2d 751, 756 (10th Cir.1984); *United States v. Panter,* 688 F.2d 268, 271 (5th Cir.1982); *United States v. Agard,* 605 F.2d 665, 667 (2d Cir.1979).

[8]We note that the justification instructions given in this case omitted an element of this defense. The jury was not instructed that it had to find that Deleveaux did not recklessly place himself in a situation where he would be forced to engage in criminal conduct. In this regard, the instruction was a more favorable instruction than Deleveaux was entitled to receive.

7

*See United States v. Wofford,* 122 F.3d 787, 789-90 (9th Cir.), *cert. denied,* 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997); *Paolello,* 951 F.2d at 540; *Singleton,* 902 F.2d at 472; *see also United States v. Gant,* 691 F.2d 1159, 1162-63 (5th Cir.1982).[9]

We also conclude that this limited justification defense does not negate any element of § 922(g)(1), but is an affirmative defense to § 922(g)(1). *See Singleton,* 902 F.2d at 472-73; *see also Gant,* 691 F.2d at 1165. The justification defense serves only as a legal excuse for the criminal act and is based on additional facts and circumstances that are distinct from the conduct constituting the underlying offense.

We expressly reject Deleveaux's contention that this justification defense negates the mens rea required for a § 922(g)(1) violation and is thus not an affirmative defense. Deleveaux argues that he did not take possession of the pistol with the intent to violate the law and thus did not act "knowingly" for purposes of § 922(g)(1). However, Deleveaux's argument is based on a misunderstanding of the requirement that a defendant act "knowingly" for purposes of § 922(g)(1). To establish that a defendant acted "knowingly," the prosecution is not required to prove that the defendant knew that his possession of a firearm was unlawful. *See United States v. Thompson,* 25 F.3d 1558, 1563-64 (11th Cir.1994); *see also Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 1945-46, 141 L.Ed.2d 197 (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of the knowledge of facts that constitute the offense."). The prosecution need show only that the defendant consciously possessed what he knew to be a firearm. *See United States v. Jones,* 143 F.3d 1417 (11th Cir.1998) ("The crime of being a felon in possession of a firearm is easily understood. Possession alone is sufficient. The crime does not require any specific intent.").

Indeed, this Court has held that § 922(g)(1) "is a strict liability offense" and, consequently, does not require the prosecution to prove that the criminal acts were done with specific criminal intent. *See Thompson,*

---

[9]Although these circuits found the justification defense available under § 922(g)(1), they found that the evidence did not warrant an instruction on the defense. Thus, they did not reach the question of who bears the burden of proving justification.

25 F.3d at 1563-64 & n. 4. In other words, § 922(g)(1) has no mens rea requirement for the justification defense to negate. Thus, Deleveaux's argument that justification is not an affirmative defense to § 922(g)(1) fails. Having determined that justification is an available affirmative defense to a § 922(g)(1) charge in extraordinary circumstances, we now assume that Deleveaux's evidence warranted a jury instruction on that defense[10] and examine whether the burden of proof regarding that defense fell on the Government or Deleveaux.

B.      *Burden of Proof*

The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. *See id.; see also Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Hall v. Kelso,* 892 F.2d 1541, 1546 (11th Cir.1990). Thus, if a defendant asserts a defense that has the effect of negating any element of the offense, the prosecution must disprove that defense beyond a reasonable doubt. *See Patterson,* 432 U.S. at 210. If, however, a defendant asserts an affirmative defense that does not negate any element of the offense, the defendant may be required to prove that defense by a preponderance of the evidence. *See id.* at 210-11, 97 S.Ct. 2319 (stating that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required"); *United States v. Alvarez,* 755 F.2d 830, 842 n. 12 (11th Cir.1985) (explaining that, for affirmative defenses, "[t]he ultimate 'burden of persuasion,' ... may fall on either the government or

---

[10]We make this assumption because it is not at all clear that Deleveaux's evidence warranted a justification instruction in the first place. Deleveaux did not turn over the gun or tell the police about the gun, but continued to possess it, hiding it in the attic. *See United States v. Singleton,* 902 F.2d 471, 473 (6th Cir.1990) (finding a jury instruction on a justification defense to a § 922(g)(1) charge "unwarranted because [the defendant] failed to show that he did not maintain possession [of the firearm] any longer than absolutely necessary"); *United States v. Stover,* 822 F.2d 48, 50 (8th Cir.1987) (holding that a justification defense is not available if the defendant maintains possession of a firearm when there is no longer any imminent danger of death or serious injury). However, since the court did charge on the defense and Deleveaux was found guilty, we pretermit the issue of whether Deleveaux made a threshold showing as to each element of the defense and examine whether the court properly charged that Deleveaux bore the burden to establish that defense.

9

the defendant, as determined by statute or court decision").  As outlined above, justification is an affirmative

defense that does not negate any element of the charged offense.

Because justification is an affirmative defense, the district court properly required Deleveaux to

prove justification by a preponderance of the evidence.  *See Patterson,* 432 U.S. at 210-11, 97 S.Ct. 2319;

*see also United States v. Willis,* 38 F.3d 170, 179 (5th Cir.1994) ("Since a justification defense such as duress

is an affirmative defense, the burden of proof is on the defendant....  To succeed, the defendant must prove

each element of the defense by a preponderance of the evidence.");  *United States v. Dominguez-Mestas,* 929

F.2d 1379, 1384 (9th Cir.1991) ("When, as here, a defense of duress does not involve refutation of any of the

elements of the offense we conclude that it is proper to place the burden of proving that defense by a

preponderance of the evidence on the defendant.").  Indeed, placing the burden on Deleveaux to prove

justification is appropriate in light of the absolute language in § 922(g)(1) prohibiting possession of a firearm

by a convicted felon and making this a strict liability offense.  *See also Paolello,* 951 F.2d at 542 (although

not reaching the question of how to allocate the burden of proof, stating in dicta that "[t]o ensure that this

strict prohibition [in § 922(g)(1) ] is effectuated, we should require that the defendant meet a high level of

proof to establish the defense of justification.").

Deleveaux relies heavily on *United States v. Talbott,* 78 F.3d 1183 (7th Cir.1996) (per curiam), where

the Seventh Circuit held that the trial court improperly required the defendant to prove "self-defense" to a §

922(g)(1) charge.  While the defendant called it "self-defense," the Seventh Circuit noted that in the §

922(g)(1) context the defense "has been described as duress, coercion, necessity, or self-defense. Differences

among these defenses and terminology do not affect our analysis."  *Id.* at 1186 n. 2.

We decline to follow *Talbott* because we disagree with its reasoning that an express statutory

allocation of the burden of proof is always required before a defendant in a federal criminal trial must prove

an affirmative defense.[11]  Implicit in the Seventh Circuit's reasoning is the assumption that all affirmative

---

[11]In reaching this conclusion, the Seventh Circuit pointed out that the Constitution requires the government
to prove beyond a reasonable doubt every element of the charged offense and that "federal and state

defenses negate an element of the offense charged. If this assumption were true, then the Seventh Circuit would be correct that the burden would remain on the government to negate affirmative defenses beyond a reasonable doubt. However, there are common law affirmative defenses that serve only as a legal excuse for the criminal act and are based on additional facts and circumstances that are distinct from the offense conduct. As we have already recognized, the justification defense to § 922(g)(1) is an example of this type of affirmative defense.

In addition, the cases holding that Congress and state legislatures may enact laws allocating to criminal defendants the burden of proving affirmative defenses have *not* stated that a legislative enactment is always necessary before a defendant can be required to bear this burden of proof. *See Martin,* 480 U.S. at 233, 107 S.Ct. 1098, 94 L.Ed.2d 267; *Patterson,* 432 U.S. at 210, 97 S.Ct. 2319, 53 L.Ed.2d 281. Indeed, as the Supreme Court observed in *Patterson,* at common law the burden of proving all affirmative defenses rested on the defendant. 432 U.S. at 202; *see also Martin v. Ohio,* 480 U.S. 228, 235, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). It may be true, as Deleveaux argues, that in certain criminal cases federal courts generally require the government to negate non-statutorily created defenses.[12] However, there are established exceptions to this general practice depending in part on the offense charged and the nature of the affirmative defense. *See, e.g., United States v. Unser,* 165 F.3d 755, 765 (10th Cir.) (holding that the defendant must

legislatures may reallocate the burden of proof by labeling elements as affirmative defenses and stating that criminal defendants bear the burden of proving those defenses." 78 F.3d at 1185 (citing, *inter alia, Martin v. Ohio,* 480 U.S. 228, 233, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), and *Patterson,* 432 U.S. at 210, 97 S.Ct. 2319). From these basic propositions, the Seventh Circuit reasoned that some affirmative legislative action is necessary before a defendant may be required to prove an affirmative defense. *Id.* at 1186. According to the Seventh Circuit, absent such action, "the burden of proof remains on the government to negate beyond a reasonable doubt the affirmative defense properly raised by the defendant." *Id.* Because no statute affirmatively allocated the burden of proving self-defense to the defendant, the Seventh Circuit concluded that the burden was on the government to negate the defense beyond a reasonable doubt. *Id.*

[12]*See, e.g., United States v. Alvarez,* 755 F.2d 830, 842 (11th Cir.1985) (in the context of a charge of assaulting a federal officer under 18 U.S.C. § 111, stating that absence of self-defense must be proven beyond a reasonable doubt by the government); *United States v. Mitchell,* 725 F.2d 832, 836 (2d Cir.1983) (in context of armed bank robbery charges, stating that prosecution must disprove at least one element of duress defense beyond a reasonable doubt).

11

prove a necessity defense to a charge of unlawful possession and operation of a motor vehicle in a National Forest Wilderness Area, in violation of 16 U.S.C. § 551, which Tenth Circuit concluded is a strict liability offense), *cert. denied,* --- U.S. ----, 120 S.Ct. 40, 145 L.Ed.2d 36 (1999); *United States v. Willis,* 38 F.3d 170, 179 (5th Cir.1994) (holding that the defendant must prove by a preponderance of the evidence the common law affirmative defense of duress to a § 924(c)(1) charge); *United States v. Dominguez-Mestas,* 929 F.2d 1379, 1384 (9th Cir.1991) (deciding that the defendant has "the burden of proving duress by a preponderance of the evidence as a defense to a charge of unlawful importation of merchandise [in violation of 18 U.S.C. § 545]").

An exception from the general practice of requiring the government to disprove non-statutorily created defenses is also appropriate in the context of the justification defense to a § 922(g)(1) charge. As we have already indicated, this is because the justification defense is a limited defense to a strict liability statute, which sought broadly to prohibit possession of firearms by convicted felons. The justification defense also does not negate any element of this offense, but requires proof of additional facts and circumstances distinct from the evidence relating to the underlying offense.

Additionally, as in *Unser* and *Dominguez-Mestas,* there are strong practical considerations in favor of requiring the defendant rather than the government to bear the burden of proving the justification defense to a § 922(g)(1) charge. *See Unser,* 165 F.3d at 765; *Dominguez-Mestas,* 929 F.2d at 1384; *see also Morrison v. California,* 291 U.S. 82, 91, 54 S.Ct. 281, 78 L.Ed. 664 (1934) (recognizing that the burden of establishing an affirmative defense may properly be placed on a defendant when there is "a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception"). The defendant will usually be best-situated to produce evidence relating to each element of this affirmative defense. In contrast, this evidence often will be difficult, if not impossible, for the government to obtain. Under these circumstances, requiring the government to disprove justification beyond a reasonable doubt would place an

12

unrealistic burden on the government, which fairness to the defendant does not require. *See Unser,* 165 F.3d at 765; *Dominguez-Mestas,* 929 F.2d at 1384; *see also Morrison,* 291 U.S. at 94, 54 S.Ct. 281, 78 L.Ed. 664 (indicating in dicta that a departure from the usual rule of requiring the government to disprove an affirmative defense is possible where "the normal burden of proof will so thwart or hamper justice as to create a practical necessity [for a departure], without preponderating hardship to the defendant").

## V. CONCLUSION

Therefore, we conclude that the district court properly instructed the jury that Deleveaux bore the burden of proving by a preponderance of the evidence his justification defense to the § 922(g)(1) charge in this case. In addition, we find that the instructions, viewed as a whole, were sufficiently clear and complete to convey to the jury that the Government's burden of proving the elements of the charged offense beyond a reasonable doubt did not shift to Deleveaux.

*AFFIRMED.*