[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12017
Non-Argument Calendar
_____

D. C. Docket No. 05-00244-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RUSSELL DOUGLAS HARMON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(January 12, 2007)**

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

On July 9, 2005, Russell Douglas Harmon, a convicted felon, received a call

while at his friend's house from Vincent Pickering. Pickering threatened to hurt Harmon. Harmon and his friend then left the house and went to meet up with some others, including Pickering. Once there, Pickering came up to the car Harmon was in, swung a machete in Harmon's direction, and threatened to kill Harmon.

Harmon and his friend then left for Harmon's sister's house. While there, Pickering called Harmon and again threatened to kill him. Harmon then got a gun from his sister's house and left for a nearby trailer park. Pickering arrived at the trailer park soon after and came at Harmon with a gun. Harmon then shot and killed Pickering.[1]

Harmon was indicted for one count of possessing a firearm while a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Prior to his trial, the government filed a motion in limine seeking to exclude all references to the Pickering shooting. Harmon responded that this was inappropriate because he intended to prove that he was justified in possessing the firearm in order to protect himself from Pickering. The district court granted the government's motion, noting that the only reason to introduce evidence of the shooting was to prove justification, and Harmon had not met his burden to show by a preponderance of

---

[1] This is Harmon's version of the events of July 9, 2005, as proffered to the district court, which we take to be true for the purposes of this appeal. We note, however, that the government presented evidence at Harmon's trial that Harmon had been in possession of the same gun used to shoot Pickering on numerous occasions in the months before the shooting.

2

the evidence that he was entitled to the justification defense.

The case then proceeding to a jury trial. Harmon was convicted and the district court sentenced him to 120 months in prison and three year of supervised release.

This is Harmon's appeal of his conviction. His sole contention on appeal is that the district court erred in excluding evidence of the Pickering shooting because it prevented him from presenting his justification defense. The government responds that Harmon's evidentiary proffer of his entitlement to the justification defense, even if true, did not establish by a preponderance of the evidence that he was entitled to the defense.

If Harmon's proffer established that he was entitled to the justification defense, the district court erred in granting the government's motion to exclude references to the Pickering shooting at trial, because it deprived Harmon of a viable defense. We review de novo the district court's decision to grant an in limine motion based on the defendant's failure to establish that an affirmative defense applies to the facts of his case. See United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994).

In order for a defendant to avail himself of the justification defense, he must prove by a preponderance of the evidence: (1) that he was faced with an unlawful

and present, imminent, and impending threat of death or serious bodily injury; (2) he did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative to violating the law; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. United States v. Deleveaux, 205 F.3d 1292, 1297–99 (11th Cir. 2000).

The imminency prong "requires nothing less than an immediate emergency." United States v. Bell, 214 F.3d 1299, 1300 (11th Cir. 2000). In United States v. Rice, 214 F.3d 1295 (11th Cir. 2000), for example, we held that the defendant in that case did not face an immediate emergency because after he was threatened by a local gang (with whom he had a history of run-ins), he was able to leave, get his gun, and return to same spot where he had been threatened. Id. at 1297–99. "Indeed, at the time of his arrest," we said, "the [gang] was nowhere to be seen." Id. at 1299.

Likewise, Pickering was nowhere to be seen when Harmon got the gun from his sister's house. Pickering had not chased Harmon after the machete incident, even though he knew where Harmon was, as evidenced by his phone call to Harmon's sister's house. Harmon never called the police to report the machete incident. Instead, his response was to get the gun, leave the safety of his sister's

4

house and drive to the trailer park where the fatal encounter occurred.

Accordingly, under Harmon's proffer he could not establish that he was in imminent harm when he took possession of the gun at his sister's house, and that failing is fatal to the defense under Deleveaux. Harmon was therefore not entitled to pursue the justification defense at his trial, and consequently, the district court did not err in excluding all references to the Pickering shooting.

AFFIRMED.

5