[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12699
Non-Argument Calendar

_____

D.C. Docket No. 6:15-cr-00162-GAP-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAN REED,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 19, 2018)

Before WILLIAM PRYOR, NEWSOM and JULIE CARNES, Circuit Judges.

PER CURIAM:

Dan Reed appeals his conviction and sentence of 180 months of imprisonment for possessing a firearm as a felon. 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e)(1). Reed challenges the exclusion of testimony from his mental health expert, Dr. Robert Cohen, the enhancement of his sentence under the Armed Career Criminal Act, and the constitutionality of section 922(g). We affirm.

## I. BACKGROUND

The morning of January 16, 2015, Reed—his face bruised and bandaged—appeared at the fence that separated his back yard from a public storage facility where he occasionally performed odd jobs for its owner, Paul Camp. Reed told Camp that he had been robbed the previous evening. At Camp's request, Reed remained on his property, and eventually he walked home. Later that day, Reed returned to the fence line wielding a gun and shouting that he was "going to kill everybody."

Camp called 911, and Harry Oakley of the Daytona Beach Police Department responded to the call. Oakley, who had known Reed for several years, approached Reed and asked if he had a gun. Reed responded affirmatively and moved his hand to allow Officer Oakley to remove the gun from Reed's waistband. Oakley asked Reed why he was brandishing the gun and Reed responded that he was talking to the individuals who had assaulted him, although he acknowledged that his back yard was empty.

2

Oakley arrested Reed after receiving a report that he was a convicted felon. When interviewed later, Reed stated that he armed himself because several persons had attacked him the previous evening and he feared they planned to return to harm him or to "shoot[] up his mother's house."

After his indictment, Reed filed notice that he intended to call Dr. Cohen, a neuropsychologist, to testify regarding Reed's mental disabilities and his affirmative defense of justification. The government moved *in limine* to exclude Dr. Cohen's testimony as irrelevant and inadmissible. The district court granted the motion of the government with the explanation that Reed's "subjective perception of threats and subjective ability to consider reasonable alternatives is not relevant to a justification defense and that Cohen's testimony . . . would not assist the trier of fact." Before trial, Reed moved for reconsideration and proffered Dr. Cohen's testimony. The district court denied Reed's motion for reconsideration.

The jury convicted Reed, and the probation office prepared a presentence investigation report that classified him as an armed career criminal based on his three prior convictions in Florida courts for serious drug offenses. 18 U.S.C. § 924(e). The report stated that Reed had been convicted in 1987 for unlawfully selling a controlled substance, in 1990 for unlawfully possessing with intent to sell or deliver a controlled substance, and in 2011 for selling cocaine near a place of worship or business. With a total offense level of 33 and a criminal history of V,

3

the report provided a recommended sentencing range of 210 to 262 months of imprisonment. The report also stated that Reed faced a statutory sentence of 15 years to imprisonment for life.

Reed objected to the presentence report and argued that he had less than the three predicate offenses required for the sentence enhancement. Reed argued that his 1990 conviction did not qualify as a serious drug offense. He also argued that the government could not prove he committed the 1987 drug offense.

At sentencing, the government presented evidence that connected Reed to the 1987 drug offense. Cynthia Oteri, a fingerprint examiner with the Daytona Beach Police Department, testified that the right thumb on the fingerprint card made of the arrestee in the 1987 case matched both the thumb print collected from Reed for his federal firearm offense and the prints associated with his 1990 and 2011 drug convictions. Oteri testified that she obtained the fingerprint card from the print unit of Volusia County Sheriff's Office, and the manager of its print unit, Mary Seney, authenticated the fingerprint card and testified that it was transferred to her office from the Daytona Beach Police Department around 1995. Seney stated that the fingerprint card and a report of Reed's criminal history produced by the National Crime Information Center had identical aliases, dates of birth and arrest, and originating case numbers. The government also introduced a certified police affidavit, docket sheet, and judgment for the 1987 offense, which had

4

certain identical data as the fingerprint card. The fingerprint card had the same

offender name, personal characteristics, and date of birth as the affidavit and had

the same aliases, offense, and dates of birth and arrest as the docket sheet. The

docket sheet, judgment, and National Crime Center report had the same charge,

originating case number, sentence, and dates of birth, arrest, and sentencing.

After "considering the evidence as a whole, [the district court ruled that] the

government . . . met its burden of proving that [Reed] was convicted of the [1986]

offense . . . ." The district court observed that "all of the documents name Dan

Reed or some variation of that name, including his alias 'Tom Tom'" and

"consistently show[ed] that [Reed] was arrested for the sale of cocaine and

sentenced to 30 months DOC." The district court also observed that "[t]he docket

sheet, affidavit, NCIC, and fingerprint card all reflect [Reed's] birthdate of October

20, 1965"; "[t]he docket sheet and affidavit specify an offense date of July 9,

1986"; and "the docket sheet, NCIC, and fingerprint card show an August 15, 1986

arrest date."

The district court ruled that Reed's prior convictions qualified as serious

drug offenses under the Armed Career Criminal Act. The district court imposed a

fifteen-year sentence of imprisonment, the minimum under the Act. The district

court also described that sentence as "unjust."

## II. STANDARDS OF REVIEW

Three standards of review govern this appeal. Our review of the exclusion of expert testimony is deferential and only for abuse of discretion, under which "we [will] not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous." *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (internal quotation marks and citation omitted). "We review *de novo* whether a conviction qualifies as a serious drug offense under the [Armed Career Criminal Act]." *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016), *cert. denied*, 138 S. Ct. 1282 (2018). We review related findings of fact for clear error. *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999).

## III. DISCUSSION

Reed raises six challenges to his conviction and sentence. First, Reed argues that he was denied a fair trial because the jury was unable to consider Dr. Cohen's testimony about Reed's mental disabilities and their effect on his perception of reasonableness when assessing his defense of justification. As his second and third issues, Reed argues that the government failed to prove that he committed a drug crime in 1986 and that his 1990 conviction in a Florida court for unlawful possession with intent to sell or deliver a controlled substance does not qualify as a serious drug offense. Reed argues in his fourth and fifth issues, for the first time on

6

appeal, that the enhancement of his sentence based on offenses that were neither charged in his indictment nor proved to a jury violated his rights under the Fifth and Sixth Amendments and that the imposition of the statutory minimum sentence violated the Eighth Amendment and the Due Process Clause. As his sixth issue, Reed challenges, also for the first time, the constitutionality of the firearm statute, 18 U.S.C. § 922(g). We address his arguments in turn.

The district court did not abuse its discretion by excluding testimony from Dr. Cohen that was irrelevant and inadmissible. The affirmative defense of justification is available to a defendant in "extraordinary circumstances" to excuse his unlawful possession of a firearm in a situation where he faces "unlawful and present, imminent, and impending threat of death or serious bodily injury" and he has "no reasonable legal alternative to violating the law." *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000). Dr. Cohen's proposed testimony about Reed's mental disabilities would not have assisted the jury in determining whether Reed faced actual imminent harm or whether a reasonable option existed for his protection. *See* Fed. R. Evid. 702. The jury could discern from firsthand accounts of Reed's behavior whether he was justified in possessing the firearm. Dr. Cohen's proposed testimony was inadmissible as "an opinion about whether [Reed] did or did not have a mental state or condition that constitutes an element . . . of [his] defense" of justification, Fed. R. Evid. 704(b). Dr. Cohen opined that

7

Reed was "certainly under duress" when he possessed the firearm, that his intellectual disability and psychosis divested him of the ability to act rationally or to make good judgments, and that he "act[ed] out in [a] way that [was] a little excessive, but in his mind ma[d]e the most sense." Dr. Cohen addressed directly the element of immediacy in his written report, where he stated Reed possessed the firearm "because he believed that he and/or his family was under a real threat" due to his "assault[] the day prior and . . . not [being] on psychiatric medication at the time." The district court acted well within its discretion in excluding Dr. Cohen's testimony.

The exclusion of Dr. Cohen's testimony did not prevent Reed from informing the jury of his mental limitations or impair his ability to present his justification defense. For example, Officer Oakley testified that, because he was familiar with Reed, he surmised that Reed was "venting" by waiving a gun and uttering threats to his attackers. Reed's mother told the jury that Reed had "stopped learning" after ingesting aspirin as a child, that he was "schizophrenic" and fluctuated between functioning as a child and as an adult, and that he was "a little different from other children." And Reed testified that he obtained the gun because he feared that the men who robbed him the previous evening would return and re-injure him or harm his mother. *See United States v. De La Mata*, 266 F.3d 1275, 1301 (11th Cir. 2001) (concluding that the exclusion of testimony did not affect the

8

defendant's ability to present his good faith defense). Based on the evidence supporting Reed's justification defense, the district court instructed the jury that, if it found "that the government [had] proved beyond a reasonable doubt that [Reed] committed the crime as charged, [they] must then consider whether [he] should nevertheless be found not guilty because his actions were justified." The district court instructed the jury then to consider if Reed "prove[d] by a preponderance of [the] evidence" the four elements required to excuse his offense based on justification. Reed was given a fair opportunity to present his defense to the jury.

The district court did not clearly err by finding that Reed was convicted in 1987 of the unlawful sale of a controlled substance. The government connected Reed to the offense by a preponderance of the evidence, *see United States v. Alicea*, 875 F.3d 606, 608 (11th Cir. 2017), through "presenting reliable and specific evidence," *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). It was entitled to present "any information (including hearsay), regardless of its admissibility at trial, . . . provided that the information is sufficiently reliable." *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999). And the information the government presented was equivalent to what we have sanctioned as sufficiently reliable sources, such as "a [presentence investigation report], the on-the-record statements of a probation officer, and the notes of another probation officer," *id.*, uncertified docket sheets, *United States v. Brown*, 526 F.3d 691, 710

(11th Cir. 2008), *vacated on other grounds*, 556 U.S. 1150 (2009), and two convictions in New York courts using different given names based on a "probation officer's undisputed notation that both convictions bore an identification number identical to the one in [the defendant's] National Crime Information Center report," *Alicea*, 875 F.3d at 609. The fingerprint card, certified police affidavit, docket sheet, written judgment, and report from the National Crime Center that contained either Reed's name or a known alias and different combinations of his social security number, his date of birth, and the charge and dates of arrest and sentencing related to the 1987 offense, along with Oteri's identification of Reed's thumb print on the fingerprint card, established with reasonable certainty that Reed was convicted of the 1987 drug offense. Reed argues that the district court erroneously relied on the affidavit and docket sheet because they were not admitted as exhibits and that the fingerprint card was unreliable because there were gaps in the chain of custody, but those alleged defects are irrelevant because a sentencing hearing is not governed by the Federal Rules of Evidence, *see Wilson*, 183 F.3d at 1301. The district court did not clearly err in counting the 1987 conviction, which clearly qualifies as a serious drug offense, as a predicate offense for Reed's sentence enhancement.

Reed's challenge to the classification of his conviction in 1990 for the unlawful possession with intent to sell or deliver a controlled substance, Fla. Stat.

10

§ 893.13(1)(a)(1), as a serious drug offense is foreclosed by our precedents. In *United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014), we held that a violation of section 893.13(1)(a)(1) "is . . . a serious drug offense." A "serious drug offense . . . [is] an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). Reed argues that his drug conviction did not qualify as a serious drug offense in 1990 because section 893.13 also punished the act of purchasing an illegal drug, yet he acknowledges that in *Spaho v. United States Attorney General*, 837 F.3d 1172 (11th Cir. 2016), we held that the alternative acts punished "are elements rather than means" and the modified categorical approach, instead of the categorical approach, applies, *id.* at 1177. Reed's judgment of conviction, which states that he possessed an illegal drug to "sell or deliver," not to purchase, qualifies as a serious drug offense.

Reed also challenges the classification of his prior conviction on the ground that "Florida law does not require remuneration," but that argument fails. "We look to the plain language of the definitions to determine their elements," *Smith*, 775 F.3d at 1267, and a serious drug offense has no remuneration requirement.

Reed raises three new challenges to his sentence, but he cannot establish that the district court committed any error, much less plain error, because his arguments are foreclosed by our precedents. First, Reed argues that this sentence violates his

11

rights under the Fifth and Sixth Amendments because the convictions were neither alleged in his indictment nor proved to a jury beyond a reasonable doubt, but the Constitution does not "prevent[] the district court from finding the fact of [Reed's] prior convictions, or using them to designate him an Armed Career Criminal," *id.* at 1266 (quoting *United States v. Gibson*, 434 F.3d 1234, 1246 (11th Cir. 2006)) (alteration adopted). *See Almendarez–Torres v. United States*, 523 U.S. 224, 247 (1998). Second, Reed argues that the application of the mandatory minimum sentence, 18 U.S.C. § 924(e), violates the Eighth Amendment because it fails to account for his mental disabilities, but the imposition of a statutory fifteen-year sentence for recidivism "is neither disproportionate to the offense [of being a felon in possession or a firearm] nor cruel and unusual punishment," *Smith*, 775 F.3d at 1266. Third, Reed argues that the mandatory sentence violates the Due Process Clause because it prevented the district court from considering "mitigating factors," but "mandatory minimum sentencing provisions . . . [do not] deprive[] [a defendant] of an individualized sentencing proceeding . . . [in] violat[ion of] due process," *United States v. Holmes*, 838 F.2d 1175, 1177 (11th Cir. 1988).

The district court also committed no error, much less plain error, in convicting Reed because, as he concedes, his constitutional challenge to section 922(g)(1) is foreclosed by precedent. We have held that "the jurisdictional element of the statute, i.e., the requirement that the felon 'possess in or affecting commerce,

12

any firearm or ammunition,' immunizes § 922(g)(1) from [a] facial constitutional attack," *United States v. Scott*, 263 F.3d 1270, 1273 (11th Cir. 2001), and that section 922(g)(1) is constitutional as applied to a defendant who possesses a firearm that traveled in interstate commerce, *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

We **AFFIRM** Reed's conviction and sentence.

13