IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-113

No. 294A21-1

Filed 4 November 2022

STATE OF NORTH CAROLINA

v.

HAROLD EUGENE SWINDELL

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 278 N.C. App. 758, 2021-NCCOA-408, finding prejudicial error in the trial court's denial of defendant's request for a jury instruction on justification as a defense to the charge of possession of a firearm by a felon and reversing the judgment entered on 27 November 2018 by Judge Jeffery K. Carpenter in Superior Court, Bladen County. Heard in the Supreme Court on 29 August 2022.

*Joshua H. Stein, Attorney General, by Marc X. Sneed, Special Deputy Attorney General, for the State-appellant.*

*Leslie Rawls for defendant-appellee.*

BERGER, Justice.

A Bladen County jury convicted defendant of second-degree murder and possession of a firearm by a felon. Based upon a dissent in the Court of Appeals, the issue before this Court is whether the Court of Appeals erred in determining the trial court committed prejudicial error in denying defendant's request for a jury

instruction on justification as a defense to the charge of possession of a firearm by a felon. For the reasons stated below, we reverse the decision of the Court of Appeals.

## I.    Factual and Procedural Background

On June 5, 2017, defendant was charged with one count of first-degree murder and one count of possession of a firearm by a felon. Defendant's matter came on for trial on November 13, 2018.

At trial, the evidence tended to show that on May 17, 2017, defendant received a phone call from his brother, Darryl Swindell. Darryl "got into it with some guys" to whom he owed drug money. Defendant and his friend Broadus Justice drove to Darryl's residence at Oakdale Apartments and observed three men, Anthony Smith, Bobby Lee, and Cequel Stephens, "beating on" Darryl. Defendant helped break up the fight, and as defendant was pulling the men off his brother, Anthony Smith screamed: "You don't belong out here . . . [t]his is NFL [gang] territory. . . . You really ain't got no business out here anyway." It took defendant about three minutes to break up the fight, after which he left Oakdale Apartments with Darryl and Broadus. The three men returned to defendant's residence.

Darryl received a phone call from his wife who was still at Oakdale Apartments. When she expressed concern for her safety, Darryl asked defendant to take him back to Oakdale Apartments. Darryl stated that if there was additional trouble, "you know, I'll fight them." Defendant and Broadus drove Darryl back to

Oakdale Apartments and then spent approximately twenty-five minutes "hanging out" outside the apartments. Defendant testified that he returned to Oakdale Apartments to ensure that no fights took place.

¶ 5        At some point, defendant noticed Cequel Stephens, Bobby Ratliff, Anthony Smith, and Anthony's brother, Lonnie Smith, walking towards him. Defendant knew of Lonnie and believed him to be "the leader," "pretty brutal," and to have a "bad reputation" for violence. Lonnie asked defendant if he had fought his brother, Anthony, earlier in the day and defendant responded that he was trying to break up a fight. Lonnie then threw several punches at defendant, and a crowd formed as the two began to fight.

¶ 6        Defendant testified that he fell backwards onto the ground during the fight when he slipped on "some form of trash[.]" According to defendant, Anthony Smith yelled at the people in the crowd to "[b]ack the F up." Defendant testified that he observed Broadus and Darryl back away. According to defendant, Broadus is a large man, and defendant thought that Lonnie had a gun when he saw Broadus back away.

¶ 7        At that point, defendant testified that he saw "a gun on the ground," heard Anthony Smith say "[p]op him[,] [p]op him," and heard Darryl say "[w]atch out[,] [h]e got a gun." Defendant testified that he saw Lonnie reach for the gun, at which point defendant "picked it up, basically, and fired."

¶ 8        A witness to the altercation, Shawbreana Thurman, testified that defendant

"never f[e]ll" during the fight with Lonnie. Ms. Thurman testified that Cequel Stephens approached the side of Lonnie and appeared as if "he wanted to fight [defendant] too." At that point, defendant drew a gun from the front of his pants and said "[b]ack up." According to Ms. Thurman, Cequel then fled and Lonnie was "trying to run" when defendant shot him. Ms. Thurman testified that Lonnie fell to the ground and defendant approached Lonnie and shot him again.

¶ 9      An autopsy revealed that defendant shot Lonnie two or three times. One projectile entered Lonnie's back and passed through his right kidney and liver before exiting from the left part of his chest. Lonnie also sustained gunshot wounds to both of his thighs, although the medical examiner was unable to determine whether these wounds were the result of one or two shots. The medical examiner testified that the first gunshot wound, which entered Lonnie's back, would have been fatal.

¶ 10      During trial, defendant's counsel requested a jury instruction on justification as a defense to the charge of possession of a firearm by a felon. The trial court denied this request, and defendant's counsel properly preserved an objection to this denial after the jury was instructed on the charges. On November 27, 2018, defendant was convicted of second-degree murder and possession of a firearm by a felon. He was sentenced to prison for 300–372 months and 19–32 months, respectively. Defendant timely appealed to the Court of Appeals.

¶ 11      On appeal, defendant argued that the trial court erred in refusing to provide a

jury instruction on justification as an affirmative defense to the charge of possession of a firearm by a felon. *State v. Swindell*, 278 N.C. App. 758, 2021-NCCOA-408, ¶ 10. Relying on this Court's precedent in *State v. Mercer*, 373 N.C. 459, 838 S.E.2d 359 (2020), a divided panel of the Court of Appeals reversed defendant's conviction and remanded for a new trial after determining that defendant was entitled to a jury instruction on justification and that the trial court committed prejudicial error by denying defendant's requested instruction. *Swindell,* 278 N.C. App. 758, 2021-NCCOA-408, ¶ 24. The State appealed based upon a dissent.

The State contends that the Court of Appeals erred in reversing defendant's conviction and remanding for a new trial based upon its conclusion that the trial court had committed prejudicial error in denying defendant's request for a jury instruction on justification. Specifically, the State argues that the evidence in this case does not support all four elements of the justification defense as required by *Mercer*. We agree and conclude that the Court of Appeals erred in reversing defendant's conviction and remanding for a new trial.

## II. Analysis

It is unlawful for "any person who has been convicted of a felony to . . . possess, or have in his custody, care, or control any firearm." N.C.G.S. § 14-415.1(a) (2021). However, this Court has held that "in narrow and extraordinary circumstances," the

affirmative defense of "justification may be available as a defense to a charge under

N.C.G.S. § 14-415.1." *State v. Mercer*, 373 N.C. 459, 463, 838 S.E.2d 359, 362 (2020).

¶ 14 The affirmative defense of justification "does not negate any element of" the

offense charged, and "a defendant has the burden to prove his or her justification

defense to the satisfaction of the jury." *Id.* at 463, 838 S.E.2d at 363. There are four

elements that a defendant must show to establish justification as a defense to a

charge pursuant to N.C.G.S. § 14-415.1:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Id.* at 464, 838 S.E.2d at 363 (quoting *U.S. v. Deleveaux*, 205 F.3d 1292, 1297 (11th

Cir. 2000)).

¶ 15 "To resolve whether a defendant is entitled to a requested instruction, we

review de novo whether each element of the defense is supported by the evidence,

when taken in the light most favorable to defendant." *Id.* at 462, 838 S.E.2d at 362

(citing *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988)). "If a 'request

be made for a special instruction which is correct in itself *and supported by evidence*,

the court must give the instruction at least in substance.'" *State v. Lamb*, 321 N.C.

633, 644, 365 S.E.2d 600, 605–06 (1988) (emphasis added) (quoting *State v. Hooker*, 243 N.C. 429, 431, 90 S.E.2d 690, 691 (1956)).

¶ 16        Thus, to determine whether the trial court erred in denying defendant's request for a justification instruction, we analyze whether the evidence, taken in the light most favorable to defendant, establishes the elements of the defense as set forth in *Mercer*.  However, because the dissenting opinion in the Court of Appeals concluded that the second and third elements of the defense were not supported by the evidence, we limit our analysis to these elements only.[1] *See Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 463, 323 S.E.2d 23, 25 (1984) ("When an appeal is taken pursuant to N.C.[G.S.] § 7A-30(2), the only issues properly before the Court are those on which the dissenting judge in the Court of Appeals based his dissent."); *see also* N.C. R. App. P. 16(b).

¶ 17        The second element of the justification defense requires that a defendant show he "did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct . . . ."  *Mercer*, 373 N.C. at 464, 838 S.E.2d at 363.  Defendant has failed to meet his burden.

¶ 18        Defendant first visited Oakdale Apartments on May 17 because his brother "got into it with some guys."  After breaking up a "fight" in which his brother was

---

[1] Here, there is no dispute that defendant violated N.C.G.S. § 14-415.1.  The parties are in agreement that defendant was a convicted felon at the time he possessed and used a firearm to fatally shoot Lonnie Smith.

being beaten by three men, defendant was warned by Anthony Smith that he did not "belong out here" and that the area was "NFL territory." Having been warned that he was not welcome in this gang's territory and having very recently been involved in a physically violent confrontation with members of that gang, defendant acted reasonably in immediately leaving the neighborhood and returning home.[2]

¶ 19    However, defendant's decision to return to Oakdale Apartments shortly after the initial altercation, and his decision to remain there for twenty-five minutes, are of a different character. Even if we assume that defendant's temporary return to such a volatile environment was reasonable, his decision to remain was not. Given the prior physical confrontation, threats, and his brother's indication that he was willing to fight again, defendant reasonably should have known that his continued presence in the area could be the catalyst for another confrontation. Defendant's justification for returning, namely, to prevent more fights from happening, only proves that he knew and appreciated the fact that another fight was possible. Based on defendant's own testimony, taken in the light most favorable to him, we conclude that defendant

---

[2] We do not suggest that members of the alleged gang had the right to impose any limitation on defendant's presence in an area in which he had a lawful right to be. However, the warning is properly considered as a factor under the totality of the circumstances when determining whether defendant "negligently or recklessly place[d] himself in a situation where he would be forced to engage in criminal conduct." *Mercer*, 373 N.C. at 464, 838 S.E.2d at 363.

at least negligently "place[d] himself in a situation where he would be forced to engage in criminal conduct . . . ." *Mercer*, 373 N.C. at 464, 838 S.E.2d at 363.

Because a defendant bears the burden to establish each element of the justification defense, and because we conclude that defendant failed to meet his burden as to the second element, we need not analyze the third element. Thus, the evidence at trial, taken in the light most favorable to defendant, failed to support each element of the requested jury instruction on justification as a defense to the charge of possession of a firearm by a felon.

### III. Conclusion

For the foregoing reasons, we conclude that defendant was not entitled to a jury instruction on justification as a defense to the charge of possession of a firearm by a felon, and we reverse the decision of the Court of Appeals.

REVERSED.

Justice MORGAN dissenting.

I respectfully dissent from the opinion of this Court's majority, choosing instead to align with the Court of Appeals majority in its determination that the trial court committed prejudicial error in declining to give defendant's requested instruction to the jury on the affirmative defense of justification upon the jury's consideration of defendant's alleged commission of the offense of possession of a firearm by a felon. From my perspective, the lower appellate court correctly concluded that defendant satisfied the four factors which we established in *State v. Mercer*, 373 N.C. 459 (2020), and as adopted from the federal appeals court case of *United States v. Deleveaux*, 205 F.3d 1292 (11th Cir. 2000), based upon the evidence presented in support of the justification defense which must be viewed in the light most favorable to defendant. *See State v. Swindell*, 278 N.C. App. 758, 2021-NCCOA-408, ¶ 22. Although my distinguished colleagues in the majority here have cited the pertinent law and have recognized the appropriate standards, nonetheless they have failed to apply the controlling law and the governing standards to reach the correct outcome in this case. Because I consider defendant to have satisfactorily fulfilled the requirements of the *Mercer* factors through the presentation of evidence which was required to be taken in the light most favorable to him, I would conclude that defendant was entitled to have the trial court instruct the jury on the existence of justification as an affirmative defense to the alleged offense of possession of a firearm

by a felon. Accordingly, I am of the opinion that the decision of the Court of Appeals in this case should be affirmed, therefore reversing the judgment of the trial court for its commission of prejudicial error and remanding the matter for a new trial.

¶ 23        This Court's decision in *Mercer* offers significant and persuasive guidance through the salient principles which it provides. "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant." *Mercer*, 373 N.C. at 464 (quoting *State v. Mash*, 323 N.C. 339, 348 (1988)). "[T]his Court reviews de novo whether each element of the defense is supported by substantial evidence when taken in the light most favorable to the defendant." *State v. Meader*, 377 N.C. 157, 2021-NCSC-37 ¶ 15 (citing *Mash*, 323 N.C. at 348). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171 (1990).

¶ 24        Further indication of the significance and persuasiveness of *Mercer* here is this Court's inaugural recognition, by way of our decision in *Mercer* "that in narrow and extraordinary circumstances, justification may be available as a defense to a charge under N.C.G.S. § 14-415.1," *Mercer*, 373 N.C. at 463, the statute which defendant in the present case allegedly violated. "[L]ike other affirmative defenses, a defendant has the burden to prove his or her justification defense to the satisfaction of the jury." *Id.* This Court announced in *Mercer*

> that to establish justification as a defense to a charge under
> N.C.G.S. § 14-415.1, the defendant must show:
>
> (1) that the defendant was under unlawful and present,
> imminent, and impending threat of death or serious bodily
> injury; (2) that the defendant did not negligently or
> recklessly place himself in a situation where he would be
> forced to engage in criminal conduct; (3) that the defendant
> had no reasonable legal alternative to violating the law;
> and (4) that there was a direct causal relationship between
> the criminal action and the avoidance of the threatened
> harm.

*Id.* at 464 (quoting *Deleveaux*, 205 F.3d at 1297).

While the majority decided that it was only necessary to conclude, in its estimation, that defendant here did not meet his burden of proof to establish the second *Mercer* factor, and therefore, the majority determined that it was unnecessary to address the third *Mercer* factor which the dissenting opinion in the Court of Appeals also opined was inadequately shown by defendant in addition to the second *Mercer* factor, I take the position that the evidence adduced at trial was sufficiently ample to require the trial court to give defendant's requested instruction on the affirmative defense of justification to the jury because defendant satisfied his burden of proof to warrant the jury instruction.

Defendant testified at trial that he received a telephone call from his brother in which defendant's brother expressed concern and anticipation that the brother "was expecting some guys to do something—something to him" at the apartment complex where defendant's brother and his wife resided. As a result of this telephone

conversation, defendant went to his brother's apartment complex and, when defendant arrived, saw that his brother "was on the ground" and that three or four men "were already beating on him." Defendant helped to break up the fight, which defendant subsequently learned concerned debt for illegal drugs. Defendant and his brother were able to depart the area and to proceed safely to defendant's residence without further incident. Subsequently, the wife of defendant's brother contacted her husband by telephone to ask him to return home to her and their children. Consequently, defendant transported his brother, along with a friend, by vehicle back to the apartment complex where the fight had earlier occurred, accompanying his brother "just to make sure that no fights happened." Upon arrival, defendant did not see any of the men who had been involved in the altercation with defendant's brother, and defendant testified that the situation was "peaceful." While defendant engaged in conversation with several residents of the apartment complex, defendant then saw Lonnie Smith approaching him. Smith was accompanied by James Ratliff, Bobby Lee Ratliff, Cequel Stephens, and Anthony Smith—the four men who were involved in the prior fisticuffs with defendant's brother. Defendant had known Lonnie Smith for a number of years, was aware that Lonnie Smith was the brother of Anthony Smith, and was familiar with Lonnie Smith's reputation as a "pretty tough guy" and as "being pretty brutal." Defendant testified that Lonnie Smith made a comment to defendant about defendant's physical interaction with Lonnie Smith's brother

Anthony Smith during the fight earlier in the day, to which defendant responded that defendant was just "trying to diffuse the situation" and "was just trying to break up the—break up a fight." Defendant said to Lonnie Smith during their exchange, "I didn't jump on your brother."

¶ 27        Each testimonial account rendered by witnesses at trial, including the version given by defendant, indicated that Lonnie Smith initiated physical contact with defendant by striking defendant upon the side of defendant's face or head. A brief fight ensued, with Lonnie Smith punching defendant several times in the face and head region of defendant's body. Defendant testified that defendant "slipped" and "fell backwards," landing on the ground. While seated on the ground, defendant saw Anthony Smith and Cequel Stephens approach defendant from defendant's right side. Next, according to defendant's testimony at trial, he heard his brother call out a warning to defendant about Anthony Smith, exclaiming, "Watch out. He got a gun." Defendant noticed a firearm on the ground in front of him, about one foot or two feet away. As he saw the gun, defendant hurried to grab it before Lonnie Smith could get it, particularly after defendant heard Anthony Smith yell the phrase "pop him," which defendant interpreted to mean that Lonnie Smith was being encouraged by his brother Anthony Smith to shoot defendant. Defendant testified that he was in "complete fear" as he observed Lonnie Smith also reaching for the gun which lay on the ground, because defendant was afraid that Lonnie Smith would shoot defendant

with the gun if Lonnie Smith obtained it. Upon successfully gaining possession of the gun before Lonnie Smith did, defendant testified that defendant wanted to acquire the weapon despite his inability to lawfully possess a firearm as a convicted felon because defendant could not think of "any other reasonable way to get out of th[e] situation." Defendant testified that he then shot Lonnie Smith because defendant believed that defendant was about to be killed. Defendant then returned to his vehicle, drove away from the apartment complex, and contacted authorities to report the incident.

¶ 28        Recounting the evidence presented by defendant in support of his claimed affirmative defense of justification and viewing the evidence in the light most favorable to defendant, I regard the evidence to be sufficient to support defendant's requested jury instruction on justification as an affirmative defense to the alleged crime of possession of a firearm by a felon. The evidence is amply substantial, in my view, to qualify as relevant evidence that a reasonable mind *might* accept as adequate to support a conclusion. *Franklin*, 327 N.C. at 171. Likewise, I evaluate this evidence at issue to satisfactorily fulfill the four factors which this Court delineated in *Mercer* in order to warrant a defendant's entitlement to the jury instruction on justification.

¶ 29        In light of the foregoing analysis, I would affirm the well-reasoned decision of the Court of Appeals in this case, thereby reversing the trial court's judgments

entered against defendant and remanding the case so that defendant could receive a new trial.

Justices HUDSON and EARLS join in this dissenting opinion.