[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14394

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEONARD CHARLES SAPP,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60174-WPD-1

_____

Before ROSENBAUM, JILL PRYOR, and MARCUS, Circuit Judges.

PER CURIAM:

Leonard Sapp appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and his 192-month sentence.  On appeal, Sapp argues that: (1) the government committed prosecutorial misconduct in its closing argument because it improperly shifted the burden of proof to him; (2) the district court abused its discretion in denying his motion for a new trial because of the government's delayed disclosure and failure to disclose Brady[1] evidence before trial; and (3) his 192-month sentence was procedurally and substantively unreasonable.  After thorough review, we affirm.

## I.

The relevant facts are these.  On May 16, 2021, Fort Lauderdale Police Department ("FLPD") officers responded to a report of a shooting in progress.  About five minutes after the shooting, a witness saw Sapp get into a black Cadillac.  The witness told the driver of the black Cadillac that the police were on their way.  When the officers arrived, the black Cadillac was pulling away with multiple bullet holes in it.  Some officers followed the black Cadillac while others stayed at the scene.  Officers followed the black Cadillac for about eight minutes, until it arrived at Sapp's home in

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

Ft. Lauderdale. The car pulled into the front swale and Sapp immediately exited from the front passenger seat. Officers handcuffed Sapp and began to pat him down, at which point they found a 9mm pistol in his front waistband.

On June 22, 2021, a federal grand jury indicted Sapp for possession of a firearm by a convicted felon. In July, the government filed a response to the standing discovery order, attaching Sapp's statements, criminal history, and police reports. In the response, it noted that records and tangible objects within its possession and material to the defense could be inspected at the U.S. Attorney's office and that Sapp should set up a date to examine evidence. It said that the attachments to its discovery response were not all the records the government intended to introduce at trial. It added that there was body camera footage and that it would make an additional discovery production with the footage upon receipt. About a week before trial, Sapp received additional materials from the government, including crime scene photos and the body camera footage. Then, a few days before trial, Sapp received more materials, including a crime scene report.

At trial, Sapp argued to the jury that he was not guilty based on the affirmative defense of justification, explaining that on the night of the shooting, two men had approached Sapp, attempted to rob him, and shot him in the hand, after which he wrestled a gun from them and drove off. The court granted Sapp's request that the court give the Eleventh Circuit Pattern Instruction on the

justification defense.[2]  In its rebuttal during closing arguments, the government told the jury that the defendant had the burden of proving his affirmative defense of justification, and that the defendant had the ability, through the issuance of subpoenas, to obtain evidence he thought relevant to meeting this burden.  After deliberations, the jury found Sapp guilty, and, later, the district court

---

[2] The court instructed the jury:

> Now, the defendant claims that if he committed the acts charged in the indictment, he did so only because he was forced to commit the crime.

> If you conclude that the Government has proved beyond a reasonable doubt that the defendant committed the crime as charged, you must then consider whether the defendant should nevertheless be found not guilty because his actions were justified by duress or coercion.

> To excuse a criminal act, the defendant must prove by a preponderance of the evidence, first, that there was an unlawful and present, immediate and impending threat of death or serious bodily harm to the defendant or another.

> Second, that the defendant's own negligent or reckless conduct did not create a situation where the defendant would be forced to engage in that crime.

> Third, that the defendant had no reasonable, legal alternative for violating the law, and, fourth, that avoiding the threatened harm caused the criminal action.  A preponderance of the evidence is enough evidence to persuade you that the defendant's claim is more likely true than not true.

> If you find that the defendant has proven each of these elements by a preponderance of the evidence, you must find the defendant not guilty.

imposed a 192-month sentence, which was at the low end of the 188- to 235-month guidelines range.

This timely appeal follows.

## II.

When a defendant objects to a prosecutor's comments during closing argument, we review claims of prosecutorial misconduct *de novo*. *United States v. Schmitz*, 634 F.3d 1247, 1266–67 (11th Cir. 2011). We also review alleged *Brady* violations *de novo*. *United States v. Stein*, 846 F.3d 1135, 1145 (11th Cir. 2017). However, we review the denial of a motion for a new trial for abuse of discretion. *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013); *United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002). A court abuses its discretion by misapplying the law or making clearly erroneous factual findings. *Scrushy*, 721 F.3d at 1303.

We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (quotations omitted). But if a party does not make an argument of procedural reasonableness in the district court, we review only for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise

our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

### III.

First, we find no merit to Sapp's claim that the government committed prosecutorial misconduct in its closing argument. We've long held that improper assertions meant to mislead the jury are forbidden in closing arguments. *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009). To establish prosecutorial misconduct, the remarks (1) must be improper and (2) must prejudicially affect the substantial rights of the defendant. *Id.* A defendant's substantial rights are affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. *Id.*

We consider four factors in determining whether a prosecutor's conduct had a reasonable probability of changing a trial's outcome: (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberate or accidental; and (4) the strength of the proof establishing the guilt of the defendant. *Id.* When the record contains sufficient independent evidence of guilt, any error is harmless. *Id.* We consider prosecutorial misconduct in the context of the entire trial, along with any curative instruction. *Id.* Improper statements can be cured by a court's instruction that "only the evidence in the case be considered." *Id.* (quotations omitted). If the court gives a curative instruction, we will reverse "only if the evidence is so

prejudicial as to be incurable by that measure." *Id.* We presume the jury followed the district court's curative instruction. *Id.*

Prosecutors cannot make burden-shifting arguments that suggest the defendant must produce evidence or prove his innocence. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). But while a defendant cannot be obligated to prove his innocence to a jury, he can be required to prove affirmative defenses. *United States v. Blankenship*, 382 F.3d 1110, 1127 (11th Cir. 2004). Also, a prosecutor may note that a defendant has the same subpoena powers as the government. *Schmitz*, 634 F.3d at 1267. So, a prosecutor may comment on defense counsel's failure to counter or explain the government's evidence or direct the jury's attention to a lack of evidence supporting the defense's theory of the case. *See United States v. Bernal-Benitez*, 594 F.3d 1303, 1315 (11th Cir. 2010); *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). And, under the doctrine of fair response, a prosecutor may make a rebuttal to the arguments raised by defense counsel in closing. *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014).

The Eleventh Circuit Pattern Jury Instruction for an affirmative defense of justification directs that if the government proved beyond a reasonable doubt that the defendant committed the crime, the defendant must prove his actions were justified by a preponderance of evidence. Eleventh Circuit Pattern Jury Instruction S16 (2016); *United States v. Deleveaux*, 205 F.3d 1292, 1297–99 (11th Cir. 2000). Specifically, the defendant must prove by a preponderance that: (1) there was an immediate threat of death or

serious bodily harm, (2) the defendant's own negligence did not create the situation, (3) the defendant had no reasonable legal alternative to violating the law, and (4) avoiding the harm caused the criminal action. Eleventh Circuit Pattern Jury Instruction S16 (2016); *Deleveaux*, 205 F.3d at 1297 ("[A] a defendant must show these four elements to establish this defense."). This defense is available only in extraordinary circumstances. *United States v. Rice*, 214 F.3d 1295, 1297 (11th Cir. 2000).

Here, Sapp challenges statements the government made in its rebuttal during closing arguments. Among other things, the government argued that while it had the burden of proving that Sapp possessed the firearm, Sapp bore "the burden of proving his justification defense. . . . [He has] subpoena powers. [He] can collect evidence. [He] can test evidence." Sapp claims that these statements and others like them in the government's rebuttal unconstitutionally shifted the burden of proof by claiming he had the power to subpoena evidence to support his justification defense when the government delayed giving him certain evidence.

However, the government did not commit prosecutorial misconduct because the government's statements during its rebuttal were not improper. For starters, a defendant can be required to prove any affirmative defenses he may have, which in this instance was Sapp's justification defense. *Blankenship*, 382 F.3d at 1127. Thus, it was permissible for the government to say that once it had proven Sapp possessed the firearm, Sapp had the burden of proving his affirmative defense of justification because the law requires the

defendant to prove a justification defense by a preponderance of the evidence. *Deleveaux*, 205 F.3d at 1299.

As for Sapp's argument that the government improperly stated he had access to evidence when he received it late, we disagree. Under our case law, the government was allowed to say that Sapp could have subpoenaed evidence and tested it to see if it supported his defense. *Schmitz*, 634 F.3d at 1267. This is particularly true since the government's argument was made in response to Sapp's closing argument that the government conducted a poor investigation. *Reeves*, 742 F.3d at 505.

Moreover, and independently, we cannot say that the government's statements caused prejudice. The district court properly instructed the jury that the law to be applied in the case was only what was in the court's instructions, which included the court's previous instructions on the burdens of proof. The court also gave a curative instruction to the jury that it should rely only on the evidence presented at trial and any reasonable inferences drawn from the evidence, rather than the arguments of the attorneys. *Lopez*, 590 F.3d at 1256. There is no evidence the statements were so prejudicial that they were incurable. *Id.* As we'll explain below, overwhelming evidence was presented to the jury that Sapp possessed a firearm, and there was scant evidence of his justification defense. Accordingly, we affirm as to this issue.

**IV.**

Next, we are unconvinced by Sapp's argument that the district court abused its discretion in denying his motion for a new trial. A court may vacate a judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). Motions for a new trial are disfavored and granted with great caution. *Scrushy*, 721 F.3d at 1304.

It is well established that the government's suppression of evidence favorable to an accused and material to his guilt or to punishment violates his due process rights, regardless of the good or bad faith of the government. *Brady*, 373 U.S. at 87. To this end, prosecutors have a duty to learn of favorable evidence known to others acting on the government's behalf, including police investigators. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). To obtain a new trial based on a *Brady* violation, the defendant must show that (1) the government possessed evidence favorable to him; (2) he did not possess the evidence and could not obtain it with reasonable diligence; (3) the government suppressed the evidence; and (4) if it had been disclosed, there is a reasonable probability that it would have changed the trial's outcome. *Vallejo*, 297 F.3d at 1164. "[T]he burden to show a *Brady* violation lies with the defendant, not the government." *Stein*, 846 F.3d at 1145.

As for the first *Brady* prong, evidence is favorable to the defendant if it is exculpatory or impeaching. *Id.* As for the second prong, the government is not required to give a defendant information that he could obtain himself with reasonable diligence, like a public record. *Id.* As for the third prong, delayed disclosure may

qualify as a *Brady* violation "but only if the defendant can show prejudice, e.g., the material came so late that it could not be effectively used." *United States v. Beale*, 921 F.2d 1412, 1426 (11th Cir. 1991). And as for the fourth prong, a reasonable probability is one that undermines confidence in the outcome. *United States v. Scheer*, 168 F.3d 445, 451–52 (11th Cir. 1999). A defendant need not show that disclosure of the suppressed evidence would have resulted in his acquittal or that there was insufficient evidence to convict in light of the suppressed evidence. *Id.* at 452. Evidence is viewed collectively, not item by item. *Id.*

Here, Sapp says that about a week before trial, he received materials from the government that included crime scene photos, a statement to Sapp's probation officer, body camera footage of interviews with witnesses reporting that the car officers chased was not involved in the shooting, a report finding a fingerprint from the black car did not match Sapp's, a detective's supplemental report, an expert report comparing cartridges, Sapp's hospital records, and the number of bullet holes in the car. Then, a few days before trial, Sapp received a crime scene report, DNA blood swabs, cartridges, Sapp's clothes, an unidentified cell phone, unidentified Hyundai keys, the number of cartridges at the scene, the direction of the bullets, and cartridges from two locations from the gun Sapp took.

Sapp argues that this evidence -- if he'd received it sooner -- could have supported his justification defense, which was based on the idea that there had been another shooter during the shootout, so he was justified in taking the person's gun and fleeing the scene.

Specifically, Sapp notes that some shell casings were of a different caliber from the gun at issue, which demonstrated there may have been a second shooter; that the DNA blood swabs showed the blood trail may have resulted from more than one person; that unidentified keys and phone were found that were not Sapp's; that an expert had established the direction of travel from bullet holes; that the ammunition by the car was different from that on the sidewalk; that Sapp had told his probation officer he wrestled the gun away from a robber; and that Sapp's clothing was kept but not tested. He adds that the evidence showed the firearm found on him was used at two locations, supporting the idea that it was used to shoot him.

But even if we assume that Sapp satisfied the first prong of the *Brady* analysis -- that the government possessed evidence favorable to him -- he has not satisfied all of the *Brady* requirements. As for the second prong -- that he did not possess the evidence and could not have obtained it with reasonable diligence -- some of the evidence actually could have been obtained with reasonable diligence. *Vallejo*, 297 F.3d at 1164. Notably, by the detention hearing, Sapp knew there was a blood trail at the scene, and it was unclear if the blood was his. Further, the government's discovery response provided he could inspect physical materials with an appointment. So, with diligence, Sapp could have obtained evidence for trial about the testing of the blood swabs. In addition, Sapp was aware of the statements he'd made to his probation officer about the robbery -- Sapp's counsel even discussed his statement to his probation officer at the detention hearing -- and he knew about his

own hospital visit, so he could have requested both sets of records himself.

As for the remaining evidence that he received days to a week before trial -- the body camera footage, crime scene photographs, and expert reports -- he still cannot meet the third prong of the *Brady* analysis, which asks whether the government's delayed disclosure of evidence caused prejudice. As the record reflects, much of this evidence came out at trial. Sapp called his longtime friend Tavaris Jacobs -- a witness who had called 911 after hearing gunshots at the scene -- to testify about Jacobs's statement to police that they had the wrong person, which had been caught on the body camera video. The government itself presented body camera video showing a different witness stating that police had the wrong guy. In addition, Sapp cross-examined Jorge Bello, a firearm expert from the Broward County Sheriff's Office crime lab, about the location of shell casings showing that the gun found on Sapp had been shot in two places and that some shell casings were a different caliber from the gun at issue. And Sapp questioned an expert witness about a fingerprint on the car that was not Sapp's.

The record further indicates that Sapp himself did not think the late disclosure would cause prejudice. A few days before trial, he acknowledged the recently disclosed *Brady* material, made no motion to continue, and said he could overcome the delayed disclosures. In so doing, he mentioned the evidence he'd recently received, including the body camera footage, statement to his probation officer, crime scene photos, his medical records, and the expert

reports and material in them.  Then, at trial, Sapp expressly said the late disclosure of the reports was fine.  On this record, Sapp has not shown that the government's delayed disclosure of evidence caused him prejudice at trial.

Moreover, as for the final prong of the *Brady* analysis, Sapp has not established a reasonable probability that the earlier disclosure of any of these materials would have changed the outcome at trial.  *Vallejo*, 297 F.3d at 1164.  Sapp claims that calling experts and testing the evidence at issue would have supported his justification defense that he took the gun from an assailant during a shootout.  But even if that were true, the evidence would not have changed the fundamental problem with his justification defense -- that he possessed the firearm after the shootout *while there was no imminent danger*.

Indeed, to make out a justification defense, Sapp had to show a present, immediate and impending threat of death and serious bodily injury and that he had no reasonable legal alternative for violating the law.  *Deleveaux*, 205 F.3d at 1297.  However, as the record reveals, five minutes after the shooting, witness Jacobs saw Sapp return to the scene, get into another friend's car, and flee from police, even upon learning that the police were on the way.  Sapp then held onto the gun eight minutes after officers began following him in the car.  Sapp could have disposed of the gun in the time between when the shooting ended and when he drove away from police.  Or he could have waited for police and given them the gun.  But he did not do any of those things.  Once Sapp got in

the car, there was no immediate danger, and there had been a legal alternative to continuing to possess the gun. *Id.* In other words, whether more evidence had been introduced to suggest that Sapp had been robbed and another person had been shot at the scene were irrelevant to whether an emergency justified Sapp's possession of the firearm when he returned to the scene, got into a friend's car, declined to wait for police, and traveled, at a normal speed, to his residence.

In short, even if the belatedly-disclosed evidence may have supported Sapp's justification defense, his defense was not prejudiced since the evidence still would have shown that he possessed the gun after the threat of imminent harm had passed. Thus, we affirm as to this issue as well.

## V.

Finally, we are unpersuaded by Sapp's claim that his sentence was procedurally and substantively unreasonable. In reviewing sentences for reasonableness, we perform two steps. *Pugh*, 515 F.3d at 1190. First, we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall v. United*

*States*, 552 U.S. 38, 51 (2007)).[3]  The district court is not required to state on the record that it has explicitly considered each of the 18 U.S.C. § 3553(a) factors if the record reflects the district court's consideration of the § 3553(a) factors.  *United States v. Cabezas-Montano*, 949 F.3d 567, 609 (11th Cir. 2020).  Further, a failure to discuss mitigating evidence does not indicate that the court "erroneously 'ignored' or failed to consider this evidence."  *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007).

If we conclude that the district court did not procedurally err, we consider the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," based on the "totality of the circumstances."  *Pugh*, 515 F.3d at 1190 (quotations omitted).  A court may abuse its discretion if it (1) fails to consider relevant factors that are due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing a proper factor unreasonably.  *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

---

3        The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Also, a court's unjustified reliance on any one § 3553(a) factor may be a symptom of an unreasonable sentence. *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006).

We have "underscored" that we must give "due deference" to the district court to consider and weigh the proper sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotations omitted). The district court does not have to give all the factors equal weight and is given discretion to attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). We will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotations omitted).

The Sentencing Guidelines provide that the court "may depart downward" from the guideline range if "the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." U.S.S.G. § 5K2.12. The extent of the decrease depends on the reasonableness of the defendant's conduct. *Id.* Coercion is sufficient if it involves the threat of physical injury. *Id.*

We lack jurisdiction to review a discretionary decision by the district court to not apply a downward departure, unless the district court incorrectly believed it lacked authority to apply the departure. *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir.

2006).  We assume the district court knew it had the authority to depart downward unless the record indicates otherwise.  *Id.*

We do not apply a presumption of reasonableness to sentences within the guideline range, but we ordinarily expect these sentences to be reasonable.  *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014).  A sentence imposed well below the statutory maximum penalty is also an indicator of reasonableness.  *Id.*  The party challenging the sentence bears the burden of establishing that it is unreasonable based on the record and the § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

As an initial matter, Sapp did not raise a procedural objection to his sentence or argue for a departure under U.S.S.G. § 5K2.12, so we review his argument about procedural reasonableness for plain error, and we can find none.  For starters, even if Sapp had argued for a downward departure under U.S.S.G. § 5K2.12, we have no jurisdiction to review a discretionary decision not to apply a downward departure, unless the district court incorrectly believed it lacked authority to do so.  *Dudley*, 463 F.3d at 1228.  There is nothing in the record that suggests that the district court did not think it could depart downward.  It said it would consider the circumstances of offense outside of the presentence investigation report ("PSI"), and when asked to consider the justification defense, it said it would consider evidence presented at trial and the defense's arguments.

The district court also did not procedurally err by disregarding the mitigating circumstances of the offense when considering

the § 3553(a) factors. The record shows the district court considered mitigating circumstances, including Sapp's age, and the court said it considered the statements of the parties and the § 3553(a) factors, which is sufficient. *Cabezas-Montano*, 949 F.3d at 609. And, as we've noted, the district court heard mitigating arguments from defense counsel about the justification defense, observed that it was at the trial and knew of the justification argument, and said it would consider evidence presented at trial and the defense's arguments, including circumstances of the offense outside the PSI. In any event, the district court is not required to discuss mitigating evidence expressly to show it considered it. *Amedeo*, 487 F.3d at 833. On this record, the district court did not plainly err by failing to apply a downward departure or failing to consider the mitigating circumstances of the offense.

Nor has Sapp shown that his sentence is substantively unreasonable. Under our case law, the court has broad discretion when weighing the § 3553(a) factors and may weigh one factor more heavily than another. *Rosales-Bruno*, 789 F.3d at 1254. In this case, the district court not only considered arguments from defense counsel about the justification defense, but also considered other mitigating factors and attached "great weight" to Sapp's age. Further, evidence presented in the PSI indicated that Sapp had an extensive criminal history, with several offenses involving violent crimes, including strong-arm robbery and robbery with a deadly weapon. Sapp was also previously convicted of felon in possession twice. And the instant offense involved a shootout. The court

permissibly weighed this criminal history against Sapp's mitigating evidence.

It's also worth noting that the district court imposed a sentence of 192 months, which was at the low end of the guideline range and below the statutory maximum sentence of life imprisonment, both of which are factors that suggest the sentence was reasonable. *Stanley*, 739 F.3d at 656. The sentence was within 4 months of Sapp's requested sentence of 188 months and only slightly above the statutory minimum of 180 months. Accordingly, because the district court did not abuse its discretion in weighing the § 3553(a) factors, the sentence was substantively reasonable.

**AFFIRMED.**